719 S.E.2d 370

**Mary Catherine LEHMAN and Patricia Ann Powell, Plaintiffs Below, Petitioners**

v.

**UNITED BANK, INC. Defendant Below, Respondent.**

No. 101486.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2011.

Decided Nov. 10, 2011.

Tammy Mitchell McWilliams, Trump & Trump, L.C., Martinsburg, WV, for the Petitioners.

Brian M. Peterson, Bowles Rice McDavid Graff & Love LLP, Martinsburg, WV, for the Respondent.

Brenda Nichols Harper, Charleston, WV, for Amicus Curiae, West Virginia Chamber of Commerce.

McHUGH, Justice:

The matter before us involves two actions, consolidated by the Circuit Court of Berkeley County for appeal purposes, concerning the application of the West Virginia Wage Payment and Collection Act[1] (hereinafter "WPCA" or "the Act"). Plaintiffs below, Mary Catherine Lehman and Patricia Ann Powell (hereinafter jointly referred to as "Appellants"), appeal the virtually identical July 7, 2010, orders granting summary judgment to the defendant below, United Bank, Inc. (hereinafter "Appellee" or "United"). Appellants assert two reasons that the lower court erred by dismissing their claims for liquidated damages based on the provisions of the WPCA regarding late payment of compensation due at termination. First, they assert that the lower court incorrectly found that their terminations fall within the definition of a lay-off rather than a discharge under the Act. Second, they argue that the lower court wrongly concluded that severance pay does not constitute wages which are required under the Act to be paid within 72 hours of a discharge. Following careful consideration of the briefs and arguments of the parties[2] in light of the relevant law, we affirm the orders of the circuit court for the reasons set forth in this opinion.

## I. Factual and Procedural Background

Appellants were employees of Premier Community Bankshares, Inc. prior to a 2007 merger with United Bank, Inc. At Premier, Ms. Lehman held the post of Vice President of Operations, whereas Ms. Powell's job was that of Chief Financial Officer. Both of these positions were eliminated as a result of the merger, although both women stayed for a short period after the merger for transition purposes. An excerpt of the January 2007 merger agreement attached to Appellee's brief contains the following provision regarding severance pay for workers displaced by the merger:

United agrees that each Premier employee who is involuntarily terminated by United (other than for cause) within six (6) months of the Effective Date, shall receive a severance payment equal to two (2) weeks of base pay (at the rate in effect on the termination date) for each year of service at Premier (with credit for partial years of service), with a maximum payment equal to twenty-six (26) weeks of base pay.

Appellants both were notified by letters dated March 1, 2007, that their positions would be eliminated as a result of the merger. In these letters, it was estimated that the merger would be finalized early in the third quarter of 2007. They were further informed that if they elected to stay until the merger was completed, they would receive a severance payment in addition to any unused and accrued leave and any relevant bonuses or incentives. The letters contain the following paragraph regarding severance, with a quote to a portion of the merger agreement appearing above:

The severance payment is "equal to two (2) weeks of base pay (at the rate in effect on the termination date) for each year of service at Premier Community Bankshares (with credit for partial years of service), and a maximum payment equal to twenty-six (26) weeks of base pay." To receive severance pay, you must perform your duties at a satisfactory level through your job end date, including a changed or revised date.

By letters dated June 20, 2007, both women were provided with more precise information regarding their final date of employment and a calculation of estimated severance pay based upon the terms of the earlier letter. The second letters also stated:

submitted by the West Virginia Chamber of Commerce as amicus curiae.

---

1. West Virginia Code §§ 21–5–1 to 21–5–18.

2. The Court also acknowledges the additional insight afforded our deliberations by the brief

As a reminder, you must perform satisfactorily through your job end date, including a changed or revised date, in order to receive any severance or bonus payments for which you may be eligible. Bonus and severance payments will be made the next scheduled pay day after your job end date.

The final day of work for both Appellants was August 3, 2007. On what would have been their next regular pay day, August 10, 2007, they were each paid for their final days of work, their unused vacation pay, and their severance pay. Ms. Lehman's payment also included a bonus.

Appellants claimed that the final paychecks were untimely paid because under the terms of the WPCA as discharged employees they were entitled to receive their final payments within 72 hours of August 3, 2007, rather than by the next regular pay date. Based on the WPCA provision regarding liquidated damages for untimely payment of final wages, Appellants each demanded that United pay them three times the total of their final paychecks. Appellee maintains that in an effort to avoid litigation, it responded by issuing additional checks to each woman equaling three times the amount of regular earnings, applicable vacation pay, and the bonus pay for Ms. Lehman. However, Appellee refused to pay liquidated damages on the severance payments, asserting that severance pay did not amount to wages subject to the WPCA's 72–hour rule because, unlike wages, the severance pay was not earned until after termination occurred. The women each filed lawsuits over a year later seeking to recover liquidated damages for their severance pay.

No facts being in dispute, the parties filed cross-motions for summary judgment in each of the cases. In essentially identical orders, the lower court granted summary judgment in favor of Appellee on two independent grounds. The orders reflect that the trial court first found as a matter of law that the workers were timely paid pursuant to the provisions of the Act because their terminations constituted lay-offs rather than discharges. The orders also indicate that the lower court additionally found that even if the workers had been discharged, severance payments were not wages which the Act requires to be paid within 72 hours of the last day of employment.

Following consolidation of the cases by the trial court, appeal was filed with this Court on November 18, 2010.

## II. Standard of Review

■ As previously related, this matter is before us as an appeal of summary judgment orders. Additionally, the basis for awarding summary judgment in these cases turned on the lower court's interpretation of statutes governing wage payment. The same standard of review applies in both instances. As firmly established in our case law, "[a] circuit court's entry of summary judgment is reviewed *de novo*," Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), and "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. Discussion

This Court has recognized the WPCA as "remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." *Mullins v. Venable*, 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982). Thus, the obvious first step in deciding whether a violation of the WPCA has occurred involves determining if the compensation at issue was wrongly withheld. The compensation in this case involves payments due at the termination of an employment relationship. The WPCA prescribes various timetables for the payments of an employee's final pay depending on the circumstances of the termination of the employment relationship. West Virginia Code § 21–5–4 (2006) provides:

(b) Whenever a person, firm or corporation **discharges** an employee, such person, firm or corporation shall pay the employee's wages in full within **seventy-two hours.**

(c) Whenever an employee **quits or resigns,** the person, firm or corporation shall pay the employee's wages **no later than**

the next regular payday, either through the regular pay channels or by mail if requested by the employee, **except that if the employee gives at least one pay period's notice of intention to quit** the person, firm or corporation shall pay all wages earned by the employee **at the time of quitting.**

(d) When work of any employee is **suspended as a result of a labor dispute, or** when an employee **for any reason whatsoever is laid off,** the person, firm or corporation shall pay in full to such employee not later than **the next regular payday,** either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

(emphasis added). If an employer fails to pay wages as required under these provisions, the Act further provides that the employer is liable to the employee for three times the unpaid amount as liquidated damages in addition to the initial unpaid amount. W.Va.Code § 21–5–4(e).

█ Appellants argue that the lower court incorrectly determined that they were laid off with their final pay due no later than the next regular pay day rather than discharged with full pay due within 72 hours of the discharge. Although no definition of the terms "discharge" and "lay-off" appear in the WPCA, the legislative rules promulgated by the West Virginia Division of Labor to further the purposes of the Act define the terms as follows:

"Discharge" means any involuntary termination or the cessation of performance of work by employee due to employer action.

W.Va.C.S.R. § 42–5–2.8

"Lay-off" means any involuntary cessation of an employee for a **reason not relating to the quality of the employee's performance or other employee-related reason.** An employee who is laid off shall be paid all wages not later than the next regular payday through regular pay channels, or by mail if requested.

W.Va.C.S.R. § 42–5–2.10.

In sum, what controls when the final pay is due as set forth in subsections (b), (c) and (d) of West Virginia Code § 21–5–4 is whether an employee is (1) fired, (2) quits, or (3) is laid off for reasons "not relating to the quality of the employee's performance or other employee-related reason." W.Va.C.S.R. § 42–5–2.10.

Applying these statutory and regulatory provisions to the facts in Appellants' cases, the lower court reached the same conclusion with regard to both women. This conclusion is stated in the summary judgment orders as follows:

No violation of the WPCA occurred in this case because the undisputed record establishes that the Plaintiff was "laid off" on August 3, 2007, and timely paid all wages and other amounts due and owing to her on her next regular pay date of August 10, 2007. As defined in the Code of State Rules, a "lay-off" is "any involuntary cessation of an employee for a reason not relating to the quality of the employee's performance or other employee-related reason." W.Va.Code State R., § 42–5–2.10. As the undisputed record in this case shows, the Plaintiff was given notice on March 1, 2007[,] that her employer, Premier Community Bankshares, was merging with United Bank, and as a result of restructuring, her position was being eliminated. Indeed, in order to claim entitlement to the severance pay at issue in this case, she has to prove that she maintained satisfactory job performance through her last day of employment. The Defendant does not dispute that she was performing her job duties in a satisfactory manner at the time her position was eliminated. Thus, there is no dispute that her cessation of employment was involuntary on her part, and "for a reason not relating to the quality of [her] performance or other employee-related reason." W.Va.Code State R. § 42–5–2.10. Accordingly, her wages were due by the next regular pay day, *not* within 72 hours.

In support of their position that they were discharged, Appellants maintain that the Act provides that lay-offs are always temporary rather than permanent. To reach this conclusion, Appellants propose that the word

"suspended" as used in West Virginia Code § 21–5–4(d) should be read to modify the two reasons for work cessation contained in the subsection. In other words, Appellants suggest that the provisions of this subsection apply when an employee's work is *suspended* either (1) as a result of a labor dispute, or (2) *when an employee for any reason whatsoever is laid off.* They then cite to a *Black's Law Dictionary* definition of "suspend," which essentially denotes a temporary interruption or delay.

■ Appellants' argument is not born out by the plain language and construction of West Virginia Code § 21–5–4(d), which we are bound to follow. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970). The statute states in relevant part that "[w]hen work of any employee is **suspended as a result of a labor dispute,** *or* **when an employee for any reason whatsoever is laid off,** the person, firm or corporation shall pay [the employee] in full … not later than the next regular payday[.]" (Emphasis added.) As such, this portion of the statute plainly sets forth two discreet instances when it is applicable: (1) when an employee is suspended as a result of a labor dispute, *OR* (2) when an employee for any reason whatsoever is laid off. In the context of the statute, the word suspended is used only to denote an interruption in work due to a labor dispute. Contrary to Appellants' suggestion, the word suspended is not used to define, clarify or otherwise modify the second statutory alternative involving lay-offs, and we decline to read into the statute that which is not there.

The legislative rule defining lay-off also does not limit the term to any particular time period. Rather, according to the legislative rules a lay-off is distinguished from a discharge by being a termination that is not related "to the quality of the employee's performance or other employee-related reason." We further observe that Appellants' argument regarding lay-offs being temporary in nature is not uniformly accepted as the general definition of the term. "Layoff" is de-

fined in *Black's Law Dictionary* as "[t]he termination of employment at the employer's instigation esp., the termination—either temporary or permanent—of many employees in a short time. Also termed *reduction in force.*" *Black's Law Dictionary* 969 (9th Ed.2009) (emphasis in original).

■ Considering the plain meaning of West Virginia Code § 21–5–4(d) and relevant regulations, it is apparent that the reason for the cessation of work rather than the length of the cessation is what distinguishes a lay-off from a discharge. If the reason for the termination does not relate "to the quality of the employee's performance or other employee-related reason," the termination is a lay-off and not a discharge. W.Va.C.S.R. § 42–5–2.10. Accordingly we hold that the term "laid off" as used in West Virginia Code § 21–5–4(d) (2006) applies to any situation involving the lay-off of an employee, whether the lay-off is temporary or permanent in duration.

The lower court found that the undisputed facts in each of the cases before us established that the cessation of employment was not a voluntary act of either of the women, and that the reason for the employment coming to an end was not related to either woman's job performance or other employee-related reason. This reason falls within the contours of a lay-off as contemplated by the WPCA and legislative rules, and we affirm the decision of the lower court on this ground.

■ Finding that the lower court did not err in categorizing the termination of employment of either Appellant as a lay-off rather than a discharge, Appellants were fully compensated for all pay due within the prescribed statutory period. W.Va.Code § 21–5–4(d) ("not later than the next regular payday"). Consequently, the alternative issue presented in this case, centering on whether severance pay is included in the wages that are required under the Act to be paid within 72 hours of *discharge,* is not relevant to the disposition of this appeal. In keeping with our long-held position that "[c]ourts are not constituted for the purpose of making advisory decrees or resolving aca-

demic disputes," we leave the subject of severance pay in the context of wage payment claims for another day. Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991), quoting *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943).

## IV. Conclusion

For the reasons stated above, the July 7, 2010, summary judgment orders of the Circuit Court of Berkeley County are affirmed with regard to the treatment of lay-offs under the Wage Payment and Collection Act.

Affirmed.

Justice McHUGH delivered the Opinion of the Court.

Justice KETCHUM is disqualified.