IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0387

_____

FILED

November 17, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOEY J. BUTNER,
Plaintiff Below, Petitioner,

v.

HIGHLAWN MEMORIAL PARK COMPANY,
A West Virginia Corporation, and
HIGHLAWN FUNERAL CHAPEL, INC.,
A West Virginia Corporation,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Civil Action No. 19-C-48

AFFIRMED

_____

Submitted: October 18, 2022
Filed: November 17, 2022

Anthony J. Majestro, Esq.
Powell & Majestro, PLLC
Charleston, West Virginia

S. Brooks West, II, Esq.
David A. Dobson, Esq.
West Law Firm, L.C.
Charleston, West Virginia

Amanda J. Taylor, Esq.
New, Taylor and Associates
Beckley, West Virginia

Brent K. Kesner, Esq.
Ernest G. Hentschel, II, Esq.
Mark L. Garren, Esq.
Kesner & Kesner, PLLC
Charleston, West Virginia
Counsel for Respondents

Nathan J. Chill, Esq.
Poca, West Virginia
Counsel for Petitioner


JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1. "Under West Virginia Code § 55-7-28(a) (2015), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact." Syl. Pt. 12, *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d 838 (2021).

2. "'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 4, *Frazier v. Slye*, 246 W. Va. 407, 874 S.E.2d 10 (2022).

3. "'"It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).' Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002)." Syl. Pt. 8, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

4. "'The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether

there is a genuine issue for trial.' Syllabus Point 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 4, *Goodwin v. Shaffer*, 246 W. Va. 354, 873 S.E.2d 885 (2022).

5.     "'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)." Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005).

6.     Unsworn and unverified documents are not of sufficient evidentiary quality to be given weight in a circuit court's determination of whether to grant a motion for summary judgment. However, in its discretion the court may consider an unsworn and unverified document if it is self-authenticating under West Virginia Rule of Evidence 902 or otherwise carries significant indicia of reliability; if it has been signed or otherwise acknowledged as authentic by a person with first-hand knowledge of its contents; or if there has been no objection made to its authenticity.

**WOOTON, Justice:**

The plaintiff/petitioner Joey J. Butner ("the petitioner") appeals from an order of the Circuit Court of Fayette County, West Virginia, granting summary judgment to the defendants/respondents Highlawn Memorial Park Company and Highlawn Funeral Chapel, Inc. (variously "Highlawn" or "the respondents") on all claims asserted in the petitioner's civil complaint for damages arising from injuries he sustained in a fall on the respondents' property. The circuit court held that the petitioner's claims were barred by application of West Virginia Code section 55-7-28(a) (2016), commonly referred to as "the open and obvious doctrine," and further held that the petitioner had failed to produce any evidence of negligence on the part of either respondent.

Based on our review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we conclude that the circuit court erred in its application of the open and obvious doctrine. Nonetheless, we affirm the court's grant of summary judgment for the respondents because none of the evidence produced by the petitioner in opposition to the respondents' motion "show[ed] that there is a genuine issue for trial"[1] on the issue of negligence.

---

[1]W. Va. R. Civ. P. 56 (providing, in relevant part, that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. ").

1

## I. Facts and Procedural Background

On July 23, 2017, the petitioner was on his way home to his residence in North Carolina when he stopped at Highlawn Memorial Park to pay his respects at the gravesite of his brother-in-law, who had been buried there approximately two weeks earlier. The petitioner testified that he saw no holes or voids at or around the gravesite and saw nothing that would put him on notice that the ground surrounding the gravesite was not firm;[2] however, the ground beneath the petitioner gave way and he fell, resulting in a serious injury to his right shoulder. The following day, at the petitioner's request, his niece, Molly Brown, took photographs of the gravesite which showed three holes along the perimeter thereof. When questioned about the photographs during his deposition, the petitioner testified that one of the holes had been created when he fell the previous day, but reiterated that he had not seen either of the other two holes on the date of his injury:

> Q.     Okay. You've testified here today, Mr. Butner, that you did not notice any holes around the grave sit prior to the fall; is that correct?
>
> A.     I did not notice any holes or anything.

On April 12, 2019, the petitioner filed his complaint in the Circuit Court of Fayette County, alleging that the respondents' conduct had been negligent (Count I) as well as "willful, wanton and reckless" (Count II), thus entitling the petitioner to both compensatory and punitive damages. Following discovery, the respondents filed their

---

[2] In that regard, the owner of Highlawn testified that there is no signage (or any other type of warning) as to areas of the cemetery in which visitors should avoid walking.

respective motions for summary judgment on January 11, 2021; the petitioner filed his response thereto on January 12, 2021,[3] and then an amended response on February 23, 2021. Appended to the petitioner's original response was "Plaintiff's Third Supplemental Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents to Plaintiff," which contained, inter alia, the following Answer to Interrogatory No. 17:

> 1.      Plaintiff expects that previously disclosed fact witness, Andrew Lambert, will testify at trial as follows:
>
> That prior to May 2018, Mr. Lambert worked on the maintenance staff at Highlawn Memorial Park Company. After leaving employment at Highlawn Memorial Park Company, Mr. Lambert went to work for Blue Ridge Memorial Gardens in Beckley, West Virginia. Mr. Lambert is expected to testify that the grave filling procedures that he and other maintenance staff employees were instructed to use at Highlawn Memorial Park Company are different from the current grave filling procedures he has been instructed to use at Blue Ridge Memorial Gardens.
>
> While an employee at Highlawn Memorial Park Company, Mr. Lambert was not aware of any formal grave filling procedures, including procedures for tamping. All instructions during his employment with Highlawn Memorial Park Company were verbal and there was not a set of standards or formal rules for grave digging or backfilling. After after [sic] seeking employment at Blue Ridge Memorial Gardens, Mr. Lambert underwent a training course on grave digging and backfilling procedures taught by Brian Brooks, the general manager of SCI, Service Corp. International.

---

[3] For reasons not apparent on the face of the appendix record, the motion for summary judgment had been served on the petitioner's counsel on January 6, 2021, five days before it was filed with the circuit court.

3

Mr. Lambert is expected to testify that the grave digging and backfilling procedures he uses at his current employer are in his opinion superior to those used during his employment at Highlawn Memorial Park Company. Mr. Lambert is additionally expected to testify that while an employee at Highlawn Memorial Park Company, holes and voids frequently occurred on recently dug and filled graves. Mr. Lambert believes that the corners and sides of the graves were the most notorious areas of recently filled graves for voids to occur while he was an employee at Highlawn Memorial Park Company. Mr. Lambert further believes it is common knowledge in the funeral and cemetery business that the corners and sides of dug and filled graves are the areas most prone to sinkholes and collapse and furthermore that it is common knowledge in the funeral and cemetery business that if you do not properly tamp a gravesite, the corners and sides are prone to sinkholes, voids, holes or collapse.

To combat potential sinkage of backfilled graves in these known problem areas, Mr. Lambert will state that he was taught by Brian Brooks that it is SCIs [sic] practice to backfill around the corner and sides of the grave with coarse construction sand as opposed to dirt, due to the superior compaction of the construction sand. Mr. Lambert is further expected to testify that this practice of backfilling the sides and corners of graves with sand results in a vast decrease of occurrence of sinkage, voids, holes and collapse.

Additionally, Mr. Lambert is expected to testify that at his current employer, the need to come back later and re-fill a grave or address grave sinkholes, voids, holes or collapse rarely occurs. While at Highlawn Memorial Park Company, he continuously had to come back at a later time after a grave was filled and address the occurrence of sinkholes, voids, holes and collapse issues of graves. While employed at Highlawn Memorial Park Company, Mr. Lambert did not utilize a backhoe for grave filling or grave preparation. Mr. Lambert is personally aware of multiple instances of holes and voids occurring at gravesites while an employee of Highlawn Memorial Park Company.

Mr. Lambert will also testify that he personally fell in a hidden hole at a gravesite at Highlawn Memorial Park

4

Company that appeared to be solid and covered with sod. After he fell, Mr. Lambert noticed there was a void underneath the sod where the soil was not properly tamped. Mr. Lambert is expected to testify that he hurt his wrist during the incident when he fell in the grave, and required care at the hospital. While an employee at Highlawn Memorial Park Company, Mr. Lambert had no formal inspection procedures. Instead, he was told "if you see something fix it." As compared to his current employer, Mr. Lambert does not think that it is a good of safe practice. Based on his current training and work experience at Blue Ridge Memorial Gardens, Mr. Lambert does not believe Highlawn Memorial Park Company was using proper grave filling and tamping procedures while he was employed there.

2. Through additional discovery, Plaintiff now discloses Brian Brooks, a location manager for SCI, as a witness who may be called at trial. It is expected that Mr. Brooks will testify as follows:

That he is a location manager of one funeral home and two cemeteries in West Virginia that are owned by SCI. Mr. Brooks provides a training course that is given to all groundskeepers and maintenance employees at SCI owned cemeteries. Part of SCI's training course consists of proper grave digging and backfilling procedures, including tamping methods. Mr. Brooks personally taught the subject SCI course to Andrew Lambert, who works at Blue Ridge Memorial Gardens. In addition to this one day training course, SCI has other additional periodic training it provides its groundskeepers and maintenance employees related to proper grave digging and backfilling procedures including tamping methods.

Mr. Brooks is further expected to testify that SCI maintains grave inspection and grave digging and backfilling policies and procedures for use and reference by all of SCIs [sic] employees. Mr. Brooks believes that the areas of the corners and sides of recently backfilled graves are problem areas that are prone to sinkage, voids, holes and collapse, which is commonly known in the funeral and cemetery industry. To combat potential sinkage of backfilled graves in these known problem areas, it is SCIs [sic] practice to backfill around the corner and sides of the grave with sand as opposed

5

to dirt, due to the superior compaction of sand. Mr. Brooks believes that this practice of backfilling the sides and corners of graves with sand results in a vast decrease in occurrence of sinkage, voids, holes and collapse.

Significantly, for purposes of resolving the issues raised in this appeal, the petitioner's answers to respondents' interrogatories were not verified and thus did not conform to the requirement of West Virginia Rules of Civil Procedure 33(b)(1) that they "shall be answered separately and fully in writing *under oath*." (Emphasis added).

Thereafter, petitioner filed a supplemental response and appended what was designated as a "written transcript of Mr. Lambert's testimony as well as the original recording for the Court's review."[4] This designation was inaccurate, as Mr. Lambert had never testified; rather, the transcript and recording were of a telephone conversation between Mr. Lambert and one of the petitioner's attorneys, Nathan J. Chill. The transcript was undated, unsigned, and unverified. Further, as was the case with the petitioner's original response, the supplemental answer to respondents' interrogatories was not verified.

Following a hearing, the circuit court granted summary judgment for the respondents on all claims. Although the petitioner had testified that he had not seen the

---

[4] The original recording was not made a part of the appendix record on appeal, and therefore we express no view on its authenticity, admissibility, or relevance to the issues discussed herein.

6

surface holes and voids shown in the photographs – photographs which were, it will be recalled, taken the day *after* the incident – the court held that the holes and voids were nonetheless open and obvious because

> should a jury determine that the holes and voids were present, as depicted in the photographs taken following the incident, the Court finds that there would be no duty of care upon the Defendants to protect Plaintiff from the obvious and apparent danger presented by the same. As such, pursuant to W. Va. Code § 55-7-28(a), the Court finds and concludes Defendants could not be held liable for any civil damages or injuries sustained by Plaintiff as a result of falling into one of these open and obvious holes.

Additionally, the court reasoned that if the holes and voids were "not visible or discernible to [the petitioner] as he walked to, and stood at, the grave site," then *a priori* they could not have been visible or discernable to the respondents either. Thus, the court concluded, the respondents owed no duty of care to protect the petitioner because any dangers were "as well known to the person injured as they [were] to the premises owner or occupant," *Id*. § 55-7-28(a).

Finally, the court found that the petitioner's claims failed in any event because the testimony of his expert witness, Mr. Stovall, was wholly conclusory; he could point to no actual evidence that the respondents had actual or constructive knowledge of the alleged defective condition that caused the petitioner's fall, or that the respondents had failed to adequately pack the dirt back into the grave before they replaced the sod. Further, although Mr. Stovall was critical of the respondents' failure to have written policies and procedures for opening and closing graves, he cited no authority to support his contention that such

7

written policies and procedures were industry standards or otherwise required by law. The court refused to credit the anticipated evidence of Mr. Lambert and Mr. Brooks, finding that because Mr. Lambert had actually closed the grave in question when he was still an employee of the respondents, he was "essentially criticizing his own workmanship"; that both individuals' testimony "go towards the possible cause of the hidden hole and not to its visibility on the date of the alleged incident"; and that there was no evidence "which would give historical context" to the anticipated testimony. This appeal followed.

## II. Standard of Review

As was the case in *Lehman v. United Bank, Inc*., 228 W. Va. 202, 719 S.E.2d 370 (2011), we are reviewing both the circuit court's summary judgment order and its interpretation of West Virginia Code section 55-7-28(a), upon which the grant of summary judgment to the respondents largely rested. We have found that

> [t]he same standard of review applies in both instances. As firmly established in our case law, "[a] circuit court's entry of summary judgment is reviewed *de novo,*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), and "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

*Lehman*, 228 W. Va. at 204, 719 S.E.2d at 372.

8

### III. Discussion

At the outset, we note that the question of whether the allegedly dangerous condition of the gravesite was "open and obvious," *id*. § 55-7-28(a), could be deemed moot in light of our holding that the petitioner failed to produce any evidence of negligence on the respondents' part. Nonetheless, we conclude that it is appropriate for this Court to address the issue because it is inextricably intertwined with, and necessary to an understanding of, the totality of the factual and legal issues presented in this case.

The statute at issue, generally referred to as the "open and obvious danger doctrine," provides in subsection (a) that

> [a] possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

*Id*. In subsection (c) of the statute, the Legislature stated that its specific intention was to "reinstate[] and codif[y] the open and obvious hazard doctrine," thereby legislatively overturning this Court's decision in *Hersh v. E-T Enterprises, Limited Partnership*, 232 W. Va. 305, 752 S.E.2d 336 (2013), a case wherein we abolished the common law doctrine – a doctrine whose judicial adoption dated back to the dawn of the twentieth century. *See* W. Va. Code § 55-7-28(c); *Hersh*, 232 W. Va. at 316, 752 S.E.2d at 347. Since the Legislature's reinstatement of the open and obvious danger doctrine, this Court has had

9

occasion to analyze its application to a number of different fact patterns. *Compare* Syl. Pt. 13, *Gable v. Gable*, 245 W. Va. 213, 858 S.E.2d 838 (2021) ("Under West Virginia Code § 55-7-28(a) (2015), whether a danger was open, obvious, reasonably apparent or as well known to the person injured as it was to the owner or occupant is a question of fact."), *and W. Liberty Univ. Bd. of Governors v. Lane*, No. 16-0942, 2018 WL 300564, at *4 (W. Va. Jan. 15, 2018) (memorandum decision) (disputed issue of fact as to whether the dangerous condition was "as well known to [plaintiff] as [it was] to the owner"), *with Tabit v. Kroger Grp. Coop., Inc.,* No. 18-0287, 2019 WL 517823, at *3 (W. Va. Feb. 11, 2019) (memorandum decision) (plaintiff's allegation of ADA violations "fall short of instigating the proximate cause of [the shopper]'s injury: that is, her entanglement with a large and obvious cautionary sign in the common space of a public restroom."), *and Drew v. Dillons Furniture*, No. 20-0842, 2022 WL 669257, at *5 (W. Va. Mar. 7, 2022) (memorandum decision) ("any danger posed by the rocking chairs [positioned near the edge of a porch] was as well known to Ms. Drew as to respondents and would have been as readily apparent to Ms. Drew as to respondents.").

The instant case is factually akin to *Gable* and *West Liberty University* in that the petitioner's sworn testimony that he saw no holes or voids at the gravesite on the day of his fall, together with the clear inference – an inference that *must* be drawn at the summary judgment stage[5] − that no holes or voids existed at that time, created a disputed

---

[5] We have previously held that

issue of material fact for resolution by a jury. Contrary to the reasoning of the circuit court, the respondents were not entitled to summary judgment on the ground that the jury could find in their favor on the issue of whether the danger was open and obvious; the question was whether there was any evidence from which the jury could find in the *petitioner's* favor on that issue. Because there was such evidence in the record, specifically, the petitioner's sworn testimony and the inferences to be drawn therefrom, the circuit court erred in granting summary judgment on the ground that any danger at the gravesite was open and obvious as a matter of law.

The circuit court also concluded that the respondents were entitled to summary judgment even if the petitioner hadn't seen any holes or voids at the gravesite, because if a dangerous condition wasn't visible to the petitioner, then it wasn't visible to the respondents either. Accordingly, the court reasoned, under the open and obvious danger doctrine the respondents would prevail because they "owe[d] no duty of care to protect

> "[a]t the summary judgment stage, the benefit of the doubt is to be given to the nonmoving party. All inferences drawn are to be made in favor of the nonmoving party. Both this Court and the court below '*must* draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.' *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758."

*Harris v. Jones*, 209 W. Va. 557, 561, 550 S.E.2d 93, 97 (2001) (emphasis added).

others against dangers that are . . . as well known to the person injured as they are to the owner or occupant." *See* W. Va. Code § 55-7-28(a). We disagree with the court's analysis, which turns the open and obvious danger doctrine inside out and creates a lose-lose proposition for any plaintiff: if the plaintiff can see or otherwise perceive the danger, he or she loses because the danger is open and obvious; and if the plaintiff cannot see or otherwise perceive the danger, he or she still loses because *a priori* the defendant can't see or perceive it either and therefore has no duty of care to the plaintiff.

It is well established in our jurisprudence that "'[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 4, *Frazier v. Slye*, 246 W. Va. 407, 874 S.E.2d 10 (2022). Here, the statutory language that a defendant "owes no duty of care to protect others against dangers that are . . . as well known to the person injured as they are to the owner or occupant," W. Va. Code § 55-7-28(a), is not only clear on its face, but clearly intended by the Legislature to shield owners, lessees or lawful occupants of land from liability in cases where the danger is *known* to them, but such danger is *equally well known* to the plaintiff. We explained this statutory provision in *West Liberty University*, where the plaintiff was injured when he attempted to dunk a ball through a basketball hoop that had been set up at the edge of a swimming pool; the hoop fell over and struck the plaintiff as he emerged from the water. 2018 WL 300564, at *4.

12

Here, the pretrial record established genuine issues of material fact, particularly as to whether the defendants failed to keep the pool in a reasonably safe condition. Defendants had actual knowledge of the hoop's dangers. Moreover, genuine issues existed regarding whether plaintiff's friends' conduct or that of the lifeguard created an open and obvious condition. In this case, defendants' employees, including the lifeguard and Dr. Noble, admitted knowledge of the dangerous condition created by the hoop. In contrast, the record on appeal shows that plaintiff had no prior knowledge of the hoop's danger because he had used the hoop only this one time, and only for about fifteen minutes before his injury. Further, plaintiff did not help the lifeguard set the hoop in place at the pool's edge, he did not speak to the lifeguard, and he testified that he did not hear the lifeguard speak to him. Further, plaintiff had no training regarding the proper set up or use of the hoop. *Thus, because the dangerous condition was not "as well known to [plaintiff] as [it was] to the owner," defendants were required to establish that the dangerous condition was "open, obvious, [and] reasonably apparent" to plaintiff.*

*Id*. (emphasis added).

As noted, the circuit court's construction of the statutory language would lead to an absurd result: a plaintiff could never win in a premises liability case where he or she didn't see or otherwise perceive the danger. In this regard, we have held that

> """It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).' Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002)."

13

Syl. Pt. 8, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019). We therefore reject the circuit court's construction of the statute; evidence that a plaintiff did not see or otherwise perceive the danger does not mean, as a matter of law, that the defendant could not have been aware of it either. To the contrary, we reaffirm our prior cases holding that the statutory language at issue, specifically, that a defendant "owes no duty of care to protect others against dangers that are . . . as well known to the person injured as they are to the owner or occupant," comes into play in cases where there is evidence that the owner or occupant knew of the dangers. W. Va. Code § 55-7-28(a).

In summary, we find that the circuit court erred in its application of the open and obvious doctrine as a basis for granting summary judgment to the respondents. The petitioner's sworn testimony that he had not seen any holes or voids at the gravesite, together with the inference to be drawn therefrom that said holes or voids were not present at the time of the petitioner's fall, *see supra* note 5, was sufficient to take the issue of open and obvious danger to the jury.

We now review the circuit court's determination that the petitioner failed to produce any evidence of negligence on the part of the respondents. In this regard, we note that the petitioner's evidence submitted in opposition to the respondents' motions for summary judgment consisted of the following: photographs of the gravesite; a one-page excerpt from the petitioner's deposition; a three-page excerpt from the deposition of Michael Phares, owner of Highlawn; the petitioner's supplemental answer to respondents'

14

Interrogatory No. 17, which describes the anticipated testimony of Andrew Lambert and Brian Brooks; a letter report dated July 10, 2019, from the petitioner's expert witness, William Stovall; and a tape and transcription of a telephone conversation between Mr. Lambert and Nathan J. Chill, one of the petitioner's attorneys – a tape which has not been made part of the appendix record, and a transcription which is undated, unsigned, and unverified.

We turn first to the deposition excerpts. The petitioner's testimony does not bear on the respondents' negligence; it simply supplies sworn evidence to support the petitioner's claim that he did not see "any holes or anything . . . open or obvious" that would indicate the gravesite wasn't on firm ground. Similarly, Mr. Phares' testimony was also immaterial to the issue of negligence. Although he acknowledged that once sod was laid on top of a grave Highlawn did not "use any sort of markers or flags to mark off areas where you should not be walking[,]" the petitioner produced no evidence that markers or flags were required by law or industry standard or that "the ordinary man in the defendant's position, knowing what he knew or should have known, [could] anticipate that harm of the general nature of that suffered was likely to result[.]" *Smoot ex rel. Smoot v. Am. Elec. Power*, 222 W. Va. 735, 736, 671 S.E.2d 740, 741 (2008).[6] Additionally, nothing contained in the three-page excerpt of Mr. Phares' deposition testimony established, or even bore on, the question of

---

[6] Although Mr. Phares stated that "we have to go back more frequently on some graves especially if the conditions were really wet when we did the burial," the petitioner produced no evidence showing that conditions at the time of the petitioner's brother-in-law's burial required extra vigilance on the part of Highlawn.

whether the respondents knew or should have known of any dangerous condition(s) existing at Highlawn.

We turn now to the letter report submitted by Mr. Stovall. We agree with the circuit court that nothing contained in this report was sufficient to raise a disputed issue of fact with respect to the respondents' negligence. For example, Mr. Stovall wrote that "[m]y *impression* is that the workers did not properly and adequately pack the dirt back into the grave before they replaced the sod[.]" (Emphasis added). However, there is not a scintilla of evidence in the record as to when and how the grave was filled, and the remaining evidence, which is susceptible of differing inferences as to exactly what happened and why, fails to support a finding of negligence on the part of the respondents. An "impression" as to what the facts might have been is not evidence of what the facts actually were; at best Mr. Stovall's "impression" was a textbook example of res ipsa loquitur reasoning,[7] and at worst it was mere speculation. Further, although Mr. Stovall criticized the fact that Highlawn "does not have a set of written practices and procedures for the task of closing a grave[,]" he did not indicate that this was required by law or industry standard or that

---

[7] The doctrine of res ipsa loquitur "applies only in cases where defendant's negligence is the *only* inference that can reasonably and legitimately be drawn from the circumstances." Syl. Pt. 5, in part, *Davidson's, Inc. v. Scott,* 149 W.Va. 470, 140 S.E.2d 807 (1965) (emphasis added). Here, where many different factors could have come into play – weather, for example, as Mr. Phares discussed – it cannot be said that the only reasonable inference that can reasonably and legitimately be drawn is that the ground around the gravesite would not have given way but for negligence on the part of the respondents.

Highlawn's failure to have written practices and procedures otherwise established a duty on its part to the petitioner under the *Smoot* test[8]; thus, he failed to establish a standard of care to be used as a yardstick for evaluating whether or not the respondents were negligent in this respect. Finally, although Mr. Stovall opined that "the cemetery was not pro-active in revisiting the gravesite to [visually] check to see if there still remained problems there with how that grave was closed[,]" this could not be the basis for a finding of negligence on the part of the respondents in the absence of any evidence of problems at the gravesite that would be visible to any observer.

We turn now to the photographs, which show the condition of the gravesite on the day after the petitioner's fall. As noted earlier, these photographs would clearly have been relevant to the jury's resolution of the open and obvious issue. However, they would be relevant to the issue of negligence if, and only if, the respondents "had actual or constructive knowledge of the defective condition which caused the injury." *McDonald v. Univ. of W. Va. Bd. of Trs*., 191 W. Va. 179, 183, 444 S.E.2d 57, 61 (1994); *accord Neely v. Belk Inc.*, 222 W.Va. 560, 571, 668 S.E.2d 189, 199 (2008); *Hawkins v. U.S. Sports Assoc., Inc.,* 219 W.Va. 275, 279, 633 S.E.2d 31, 35 (2006) (per curiam). Because the only information tendered by the petitioner that would support a finding of actual or constructive knowledge on the part of the respondents was that which was contained in the supplemental answers to interrogatories – specifically, attorney Dobson's recitation of what Andrew

[8] *Smoot*, 222 W. Va. at 735, 671 S.E.2d at 741; *see* text *supra*.

Lambert and Brian Brooks were expected to testify, followed by the tape and transcript of a telephone conversation between Mr. Lambert and attorney Chill – we must determine whether either or both of these documents were properly considered in the circuit court's resolution of the respondents' motions for summary judgment.

The circuit court's analysis of the Lambert and Brooks information was cursory, at best. First, the court catalogued what "Mr. Lambert will *purportedly* testify" (emphasis added): that the grave-filling procedures at his new place of employment are superior to those utilized at Highlawn; in particular, that the use of construction sand as backfill around gravesites is superior to re-using the original soil for that purpose; and that hidden holes and voids were not uncommon around the respondents' gravesites and he (Mr. Lambert) had actually fallen into one such hidden hole and required medical attention as a result. (Emphasis added). The court then proceeded to weigh the credibility of these statements and opinions, finding that because "Mr. Lambert actually closed the grave site at Defendant's cemetery which is at issue in this case . . . [he] is essentially criticizing his own workmanship"; and that because the specific dates and locations of the hidden holes and voids was not specified, there was no "historical context" to the anticipated testimony." Without even mentioning what Mr. Brooks might have to say, the court concluded that

> the substance of the anticipated testimony of Mr. Lambert and Mr. Brooks goes toward their preference for other grave closing methodologies and not to whether on the day of the incident the alleged hidden dangers at the grave site were as well known to Plaintiff as they were to the Defendants.

18

We conclude that the circuit court erred in finding that the anticipated testimony of Mr. Lambert and Mr. Brooks would be irrelevant to the petitioner's negligence claims. First, the court's findings that Mr. Lambert's testimony was somehow suspect because he was "criticizing his own workmanship," and that his testimony about holes and voids was somehow inadmissible in the absence of specific dates and locations, clearly demonstrate that the court had assumed the role of factfinder by weighing the evidence. This violates the fundamental precept that "'[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial.' Syllabus Point 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994)." Syl. Pt. 4, *Goodwin v. Shaffer*, 246 W. Va. 354, 873 S.E.2d 885 (2022). Second, the court was simply wrong in its sweeping assertion that the anticipated testimony of both Mr. Lambert and Mr. Brooks was confined to "their preference for other grave closing methodologies." To the contrary, the proffer of their anticipated testimony – particularly Mr. Lambert's testimony – was quite extensive, *see* text *supra*, and bore directly on a key issue: whether the respondents knew or should have known of the danger posed by holes and voids at gravesites, and, if so, what they did (or didn't do) about it.

Notwithstanding our conclusion that the circuit court erred in weighing, and then totally discounting, the anticipated testimony of the two witnesses, this is not the end of our inquiry because

19

"'[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)."

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005). We turn to the respondents' argument that because none of the Lambert/Brooks evidence was authenticated, none of it could be considered in the circuit court's resolution of the summary judgment motion.

We begin with West Virginia Rule of Civil Procedure 56(e), which provides:

*Form of affidavits; further testimony; defense required*. – Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse part's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The formality required by the rule is consistent with the fact that the stakes are high when a party makes a motion for summary judgment. Put simply, it's "put up or shut up" time for both the proponent and the opponent, who must show that the evidence – not the

20

*allegations*, but the actual *evidence* – is either conclusive, meaning there's nothing left for a jury to decide, or disputed, meaning that only a jury can resolve the facts. Pursuant to the rule, this evidence may take the form of affidavits, depositions, or answers to interrogatories, all of which have one critical thing in common: they contain information given on personal knowledge and under oath.[9] *See id*.

In the instant case, as detailed earlier, the petitioner's recitation of what Mr. Lambert and Mr. Brooks were expected to say was contained in an answer to an interrogatory that was not verified; and the transcript of the Lambert-Chill telephone conversation was neither dated, signed, nor verified, and was appended to another unverified answer to an interrogatory. This Court has noted that

> [o]rdinarily, "[u]nsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether to grant a motion for summary judgment. Therefore, documents that do not state that they are made under oath and do not recite that the facts stated are true are not competent summary judgment evidence." 49 C.J.S. *Judgments* § 328 (2009).

*Ramey v. Contractor Enters., Inc.,* 225 W. Va. 424, 432-33 n.15, 693 S.E.2d 789, 797-98 n.15 (2010)*; see also Hamon v. Morris*, No. 20-0841, 2021 WL 5033682, at *7 (W. Va. Oct. 29, 2021) (memorandum decision). This principle – we hesitate to call it a "rule" when

---

[9] West Virginia Rule of Civil Procedure 33(b)(1) provides that "[e]ach interrogatory shall be answered separately and fully in writing and *under oath*," (emphasis added), and Rule 33(b)(2) provides that "[t]he answers are to be signed by the person making them[.]"

to date it has been enunciated only in a footnote[10] and in a memorandum opinion[11] - is very

much in line with the weight of authority in both federal and state courts.

Indeed, that unauthenticated documents cannot be used to defeat a motion for

summary judgment has been described as "well settled" in federal practice,[12] as indicated

---

[10] *See State ex rel. Med. Assurance of W. Virginia, Inc. v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003) ("If this Court were to create a new exception to attorney-client privilege, it would do so in a syllabus point and not in a footnote.")

[11] *See Fairmont Tool, Inc. v. Davis*, _ W. Va. _, _, 868 S.E.2d 737, 749 (2021) ("Of course, 'memorandum decisions may be cited as legal authority, and are legal precedent,' but 'their value as precedent is necessarily more limited[.]' Syl. pt. 5, in part, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014).").

[12] It must be noted that the cases cited *infra* were decided under Federal Rule of Civil Procedure 56 as it existed prior to 2010, when substantial changes were made to the text. These changes have been characterized as follows in 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (4th ed. 2021):

> Although affidavits remain an available type of summary-judgment evidence, a formal affidavit no longer is required. Section 1746 of Title 28 specifically authorizes a written "unsworn declaration, certificate, verification, or statement" *signed by the person under penalty of perjury* to substitute for an affidavit.

(Emphasis added). Because none of the changes made to the federal rule have been made to our state rule, West Virginia Rule of Civil Procedure 56, we find that the earlier federal decisions are applicable to our analysis. And in any event, none of the documents at issue in the instant case – the unverified answers to interrogatories and the telephonic transcript – would be acceptable substitutes for an affidavit under the amended federal rule, none having been signed under penalty of perjury by a person with first-hand knowledge, *see* text *infra*, and the transcript not having been signed at all.

by the United States Court of Appeal for the Ninth Circuit in *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Cir. 1987):

> It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment. In order to be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 58-60 (2d ed. 1983) (footnotes omitted).This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment. *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976); *United States v. Dibble,* 429 F.2d 598, 601–02 (9th Cir.1970). We hold that such documents may not be relied upon to defeat a motion for summary judgment.

*Canada,* 831 F.2d at 925; *see also Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e.)'") (citations omitted); *Saunders v. Emory Healthcare, Inc*., 360 Fed.Appx. 110, 113 (11th Cir. 2010) (same); *Martz v. Union Lab. Life Ins. Co.,* 757 F.2d 135, 138 (7th Cir.1985) (same); *Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp.2d 508, 522 (E.D. Va. 2013) (same); *Miskin v. Baxter Healthcare Corp*., 107 F. Supp.2d 669, 671 (D. Md. 1999) (same). Although there are cases holding to the contrary, most of them involve a finding that the documents in

23

question, although not attached to an affidavit or otherwise verified, are self-authenticating[13] under the rules of evidence,[14] or a finding that the issue has been waved.[15]

State court jurisprudence largely follows the lead of the federal cases, both pre- and post-amendment to the federal rule, in requiring that documents be authenticated in order to be considered on a motion for summary judgment. *See*, *e.g.*, *Thomas v. Bayonne*, 339 So. 3d 71, 78 (La. Ct. App. 2022) ("A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact."); *Hamon*, 2021 WL 5033682, at *7 ("[u]nsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether to grant a motion for summary judgment.") (citation omitted); *Whyte v. Logisticare Sols., LLC*, No. CV126032173S, 2014 WL 2054015, at *3 (Conn. Super. Ct. Jan. 15, 2014) ("Because 'Practice Book § [17–45] . . . contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable . . . [the] rules would be meaningless if they could be circumvented by

---

[13] *See* Fed. R. Evid. 902; W. Va. R. Evid. 902.

[14] *See, e.g.*, *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009).

[15] *See, e.g.*, *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991) (Federal Rule of Civil Procedure 56(e) "does not, as appellee suggests, require that parties authenticate documents where appellee did not challenge the authenticity of the documents in the district court.").

filing [unauthenticated documents] in support of or in opposition to summary judgment.'"); *Gorman-Rupp Co. v. Hall*, 908 So.2d 749, 754 (Miss. 2005) ("We find that under M.R.E. 901 and M.R.C.P. 56(c) the unauthenticated documents should not have been considered."); *Booker v. Sarasota, Inc.,* 707 So.2d 886, 889 (Fla. 1ˢᵗ DCA 1998) ("A Florida court may not consider an unauthenticated document in ruling on a motion for summary judgment, even where it appears that the such document, if properly authenticated, may have been dispositive.").

The filing of a motion for summary judgment is a critical stage in a civil proceeding, as it is dispositive of a plaintiff's constitutional right to have his or her case tried by a jury.[16] For this reason, this Court is firmly of the opinion that both the proponent and opponent of such a motion must support their respective positions with actual, competent evidence, not with mere assertions as to what the parties expect to prove (but haven't yet) or what the witnesses are expected to testify (but haven't yet). Accordingly, we hold that unsworn and unverified documents are not of sufficient evidentiary quality to be given weight in a circuit court's determination of whether to grant a motion for summary judgment. However, in its discretion the court may consider an unsworn and unverified document if it is self-authenticating under West Virginia Rule of

---

[16] Article III, section 13 of the West Virginia Constitution provides in relevant part that "[i]n suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved[.]" *Id*.

Evidence 902 or otherwise carries significant indicia of reliability; if it has been signed or otherwise acknowledged as authentic by a person with first-hand knowledge of its contents; or if there has been no objection made to its authenticity.

With these standards in mind, we examine the documents in question: (a) the petitioner's answer to Defendants' Interrogatory No. 17, detailing the anticipated testimony of Mr. Lambert and Mr. Brooks, (b) the petitioner's supplemental answer, and (c) the telephonic transcript of a conversation between Mr. Lambert and attorney Chill, which was appended to the supplemental answer.

First, neither the answer to the interrogatory nor the supplemental answer was verified, and therefore neither satisfied the requirement of West Virginia Rule of Civil Procedure 33(b)(1) that "[e]ach interrogatory shall be answered separately and fully in writing *under oath*." *Id*. Second, the signature of an attorney on the answers – in both cases, David A. Dobson – was insufficient to authenticate the information contained therein because Mr. Dobson did not have first-hand knowledge; as detailed earlier, the telephone conversation on which the information was based was between Mr. Lambert and Mr. Chill, who is not a member of Mr. Dobson's firm.[17] Third, in any event the signature of an attorney on a pleading certifies only that to his or her knowledge, information, and belief, "the allegations and other factual contentions have evidentiary support or, if specifically

---

[17] The record is silent as to how information from or about Mr. Brooks was obtained.

so identified, are *likely to have* evidentiary support after a reasonable opportunity for further investigation or discovery[.]" W. Va. R. Civ. P. 11(b)(3) (emphasis added). Here, although this Court assumes Mr. Dobson's good faith belief that Mr. Lambert and Mr. Brooks *would* testify to the facts set forth in the answers to interrogatories, the fact is that they had never actually done so, and there was never a motion made pursuant to West Virginia Rule of Civil Procedure 56(f)[18] for a continuance to enable counsel to obtain affidavits from these witnesses or set up their depositions. Fourth, the transcript of the telephone conversation between Mr. Lambert and Mr. Chill was undated, unsigned, and unverified, and thus bore no indicia of reliability whatsoever.[19] In this regard, neither Mr. Lambert nor Mr. Chill in any way acknowledged the authenticity of the tape, the transcript, or the representations made in the supplemental answers to interrogatories. Fifth, none of the documents at issue were self-authenticating.

---

[18] West Virginia Rule of Civil Procedure 56(f) provides:

> *When affidavits are unavailable.* – Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

[19] As set forth *supra*, the tape recording itself has not been made a part of the record on appeal, and therefore we express no opinion as to whether anything contained on the tape might constitute indicia of reliability as to its contents.

This brings us to the sixth, and final, matter for consideration: whether the respondents have waived the issue of authenticity by failing to raise it in the proceedings below. *See Whitlow v. Bd. of Educ. of Kanawha Cnty.,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule . . . is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.")[20]  On the particular facts of this case, we decline to find such a waiver. The supplemental answer to Interrogatory No. 17, together with the transcript of Mr. Chill's telephonic interview of Mr. Lambert, was not filed until the day of the hearing on the motion for summary judgment. Our rules contemplate an orderly process of discovery that allows all parties sufficient time to read, analyze, and react to information; here, there was no time at all. Whether or not an ambush was intended, an ambush was effected, and we cannot fault the respondents' counsel for failing to make an argument

---

[20] As we explained in *Whitlow*,

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

190 W.Va. at 226, 438 S.E.2d at 18.

28

about the authenticity of a document when it's not clear that he even had time to read it, let alone research the issue of its admissibility.

In light of the foregoing, we find that the anticipated testimony of Mr. Lambert and Mr. Brooks should not have been considered in resolving the motion for summary judgment, as the evidence failed to meet the authenticity requirements of West Virginia Rule of Evidence 56(e). Inasmuch as the remaining evidence failed to establish a disputed issue of fact as to the respondents' negligence, the circuit court's grant of summary judgment must be affirmed.

## IV.  Conclusion

For the foregoing reasons, the order of the Circuit Court of Fayette County, filed on April 14, 2021, is affirmed.

Affirmed.